UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JANE ELIZABETH SNIDER-HANCOX,

    Plaintiff,

v.                                           CASE NO. 17-CV-20942-JEM

NCL (BAHAMAS) LTD.,
a Bermuda Company d/b/a
NORWEGIAN CRUISE LINES,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SECOND EMERGENCY MOTION**
**FOR SANCTIONS/MOTION TO DISMISS WITH PREJUDICE**

**COMES NOW**, Plaintiff, JANE E. SNIDER-HANCOX by and through her undersigned counsel and responds to Defendant's SECOND EMERGENCY MOTION FOR SANCTIONS/MOTION TO DISMISS WITH PREJUDICE and further states the following:

**I.   Summary- This Motion Should be denied for the following reasons:**

1. **There is no clear and convincing evidence that plaintiff acted in bad faith or perpetrated a fraud or willfully violated discovery rules or orders so as to justify a dismissal under this court's common-law authority, Rule 41b or Rule 37.**
2. **Sanctions should not be granted for failure to preserve ESI since the photos from the cruise were preserved, there is no prejudice to the defendant and no clear and convincing evidence that Plaintiff acted with intent to deprive the defendant of the phone or any photos.**

**II.  Statement of Facts:**

5/9/16 - date of accident

10/2016- Plaintiff dropped her phone in Key West and the screen cracked, (Jane Snider-Hancox: 8:9 to 8:23, 20:23 to 21:13) (Michael Hancox: 50:5 to 50:12, 51:13 to 51:22, 52:7 to 52:12).

1

Michael Hancox transferred multiple photos, including the photos from the cruise, from Plaintiff's broken cell phone to a memory card which was then inserted into the new cell phone which they purchased the next day at Metro Pcs where they had an account. (Jane Snider-Hancox: 21:21 to 22:12, 30:14 to 30:18, 31:12 to 31:17). (Michael Hancox: 52:1 to 52:6, 52:13 to 52:18). The old phone was thrown away because it was broken and the photos had been preserved. (Jane Snider-Hancox:10:9 to 10:15) (Michael Hancox: 22:24 to 23:13, 85:2 to 85:21).

The transfer was made to the memory card using either Mr. Hancox' laptop or desktop as a tool to accomplish the transfer and no data was saved on either computer. (Michael Hancox: 53/21-54/4). Sometime later in late 2016 and early 2017, both the laptop and computer were damaged beyond repair and discarded. (Michael Hancox:17:6 to 20:3).

Neither Plaintiff nor her husband remembered, that in October of 2016, the cruise ship phone had been damaged and replaced with another phone until Mr. Hancox checked with Metro Pcs in late October of 2018 and were advised that a new phone been activated in October of 2016. (Michael Hancox: 47:15 to 47:24, 50:13 to 50:21, 102:16 to 103:3,103:13 to 103:18, 105:10 to 105:25 to 107:2). They made this call and learned this information after the defense expert reported that the according to the meta data, the phone sent to him was not the phone used to take the produced photos. Therefore, both Plaintiff and Mr. Hancox had a good faith belief up until this point of time that the phone in their possession and produced to the defense expert was the phone which took the photos on the cruise. (Jane Snider-Hancox:15:4 to 15:10, 15:15 to 18:7, 80:13 to 81:11, 108:7 to 108:20, 113:4 to 113:17). (Michael Hancox: 57:23 to 58:8, 58:20 to 59:2, 59:24 to 60:2,106:2 to 107:2).

Additionally, when Mr. Hancox signed an affidavit in October of 2018 that he made a transfer of photos to the memory card of the cruise ship phone, he believed it to be true at the

2

time of the affidavit, not having remembered that this specific phone had fallen, broken and been replaced in October of 2016. (Michael Hancox: 55:12 to 57:6).

5/2017- Norwegian propounded its initial request for production. Plaintiff testified that at the she had only provided some photos that she thought were relevant as a result of a miscommunication. (Jane Snider-Hancox: 25:4 to 26:3, 63:11 to 63:19, 65:5 to 66:6).

She testified that she had provided to counsel hard copies[1] of these relevant photos before the request to produce: photos of her in a sling, one of her in a sling taken by Norwegian, one from a prior cruise and one of her with her step dad on the day they boarded. (Jane Snider-Hancox: 64:5 to 64:10, 69:19 to 71:16). Those photos were again provided digitally by the plaintiff in connection with the response to request to produce. However, she did not go back and search for more photos in connection with the request to produce since she had forgotten at that time that she had more photos from the cruise on her phone. (Jane Snider-Hancox: 64:5 to 64:10, 65:5 to 66:6, 67:4 to 68:17, 69:19 to 71:16, 73:22 to 74:24,76:14-20).

Mr. Hancox testified that as a result of miscommunication or misunderstanding of what was required by and the importance of the request for photos, he thought he only had to produce photos which were relevant. (Michael Hancox: 30:24 to 31:9, 40:15 to 40:24).

In sum, there is no clear and convincing evidence that Plaintiff *willfully* withheld and denied the existence of photographic evidence.

June 30, 2017- Plaintiff's response to request for production indicating no cruise photos was served. The undersigned counsel believed innocently, but mistakenly, that the 5/9/16 photo exhibit was from an earlier cruise since it was produced by plaintiff to him along with an earlier

---

[1] Michael Hancox: 109:7 to 109:11.

3

cruise photo. The prior cruise photo was determined by counsel not be responsive to the request for "photographs of the accident scene, accident premises..." which can be reasonably (and usually is interpreted to refer to the date and time of the accident.

6/19/18- Plaintiff listed the said 5/9/16 photo on her exhibit list (#11) since counsel then realized it was from the subject cruise. Defendant never asked to see it. It just objected.

9/26/18 - The parties' trial exhibit exchange in the morning. Defense counsel asked if the Plaintiff had the original photo and what device the photo was taken with. Counsel advised he would have to confer with Plaintiff. In the afternoon and early evening, counsel was not able to reach Plaintiff.

9/27/18-9/29/18: Counsel learned in the late morning of 9/27 that plaintiff was out the country with no phone reception until the evening. Immediately after the calendar call on 9/27, counsel was injured when he fell on the street in downtown Miami and suffered tears to his knee and wrist and was involved in his own medical care the rest of the day and a good part of 9/28/18. Counsel was not working on Saturday the 29th since he is a sabbath observer.

9/30/18- Sunday afternoon: Plaintiff confirmed that the 5/9/16 photo exhibit was taken by and retrieved from the cell phone that Plaintiff in good faith believed was the cruise ship cell phone.

10/1-10/2 - The undersigned was out of the office for a two-day Jewish holiday with no cell phone or email use permitted to him under orthodox Jewish law.

10/3 - Counsel had two doctor appointments in the morning relating to his injury and other medical issues. On information and belief, in the late morning, after departing the second health provider's office, the undersigned received a call from defense counsel. Counsel advised defense counsel at that time that the Plaintiff confirmed that the exhibit photo was taken on and retrieved

4

from the cell phone that Plaintiff in good faith believed was the cruise ship cell phone. Defense counsel asked about other photos, to which counsel responded he didn't know if there were any, but would have to check with Plaintiff. No deadline was given. Counsel was not able to reach the plaintiff on this date. The undersigned counsel does not recall any motion to compel being mentioned in this phone call. Counsel tried but was not able to reach the plaintiff on this date.

10/4 – Counsel had not had yet had a chance to speak to plaintiff in the morning concerning whether there were any other cell phone photos before he saw the unnecessary Motion to Compel filed at 11:08am. Counsel thereafter was able to reach Plaintiff and the additional cruise photos were promptly sent to undersigned counsel via email in the afternoon.

10/5- Plaintiff's response to the motion to compel indicated that all photos had been produced. When Mr. Hancox performed the search of the phone for the 10/4 production of photos, he believed that the one photo later produced on 10/15 was a duplicate since the details for the photo indicated it was taken on the same date and time as one of the others photos previously produced on 10/4. [2] (Jane Snider-Hancox:107:6 to 109:3). Plaintiff testified that at this point in time (10/15), the defense had all existing photos of the cruise although she did not know whether there were other photos from the cruise because the cruise phone was discarded after it was damaged. (Jane Snider-Hancox: 100:1 to 100:6).

10/9- Hearing on first day of trial and court order. Plaintiff's counsel's representations to the court that the all photos from the cruise had been produced and all had been taken from the cell

---

[2] This photo #20160509_162615 produced on 10/15 was taken on 5/9 at 426 pm was without metadata because that's the way Pacer saves it. Later it was sent with its meta data. The earlier produced photo # 20160509_162617 had metadata showing it was taken on the same date and time.

5

phone that plaintiff used on cruise were based on the plaintiff's good faith belief at that time that there were no more photos (she was not aware of the one which turned out not to be a duplicate) and that the device was indeed the cruise ship phone.

10/11- Email from defense counsel requesting an inspection of the device and a call to discuss the "parameters" of same. The undersigned counsel replied that the parties would talk the next day, 10/12, since he was out of the office and stated "My suggestion would be for you to send me an outline of your proposal in writing for our review before we speak." No such outline was sent.

10/12- Defense counsel advised during the phone conference when the undersigned asked about the details of the inspection, that their expert would examine all the photos to find any relating to the cruise and provided no other details. Defense counsel sent an email which stated that "It is Norwegian's intention to have the phone inspected only for photographs" and again provided no details of the examination.

10/15 - The undersigned counsel emailed a detailed response to defense counsel requesting an independent forensic examination.

10/18- Defendant filed a second motion after making no attempt to discuss the details of the proposed inspection other than a perfunctory call that they were filing this motion and whether plaintiff would agree.

10/25/18- Plaintiff's phone is mailed to the defense expert per order of the court.

10/29/18 (on information and belief) - Defense counsel advised that the phone sent to their expert was not the phone used to take the photos according to the photo metadata. Please see the paragraph above on p. 2 titled "10/2016" for the events occurring thereafter.

6

**There is no evidence (let alone clear and convincing evidence) that any cruise related photos were deleted by Plaintiff. -** The defense expert cannot determine if any photos were deleted. ( See Horton affidavit.)  Mr. Hancox never testified that any cruise photos were deleted.  Rather, what he said was that although it was possible, he did not know if <u>any</u> photos (not cruise photos specifically) were ever deleted as result of a need to free up memory. (Michael Hancox: 113:12 to 113: to 114:23,115:2 to 115:7).

**There is no evidence (let alone clear and convincing evidence) that Plaintiff willfully discarded the cruise ship phone with the intent to destroy evidence.**

The photos eventually produced differ in only one respect: they show Plaintiff drinking two mimosas earlier in the day as opposed to one mimosa later in the day.

**There is no evidence (let alone clear and convincing evidence) that Plaintiff intentionally withheld photos in order to hide evidence or commit a fraud of any sort.**
Indeed, if Plaintiff had seriously wished to commit a fraud, she would never have produced the 5/9/16 photo with her step father.  She simply would have said from the very get go, I didn't take any photos with my phone and I no longer have the phone.

II.     Argument:

1. **There is no clear and convincing evidence that plaintiff acted in bad faith or perpetrated a fraud or willfully violated discovery rules or orders so as to justify a dismissal under this court's common-law authority, Rule 41b or Rule 37.**

**"Invocation of a court's inherent power requires a finding of bad faith."** *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).  The courts should be cautious in exerting their inherent power and "must comply with the mandates of due process, both in determining that the requisite bad faith exists and then deciding on the proper sanctions. *Byrne v. Nezhat,* 261 F.3d

7

1075, 1106 (11th Cir. 2001). "Because the court's inherent power is so potent, it should be exercised "with restraint and discretion. id.

For the most drastic sanction of dismissal to be proper, there must be finding of willfulness or bad faith. *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1337 (9th Cir. 1985)**.  It is also well settled that the evidentiary standard is that there must clear and convincing evidence** that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.  *Barash v. Kates,* 585 F. Supp. 2d 1347, 1365-66 (S.D. Fla. 2006); *McDowell v. Seaboard Farms*, CASE NO. 95-609-CIV-ORL-19, 1996 U.S. Dist. LEXIS 19558, at *6 (M.D. Fla. Nov. 4, 1996).  See also *Autorama Corp. v. Stewart,* 802 F.2d 1284, 1287-1288 (10th Cir. 1986); *Weinberger v. Kendrick,* 698 F.2d 61, 80 (2d Cir. 1982); *Shepherd v. Am. Broad. Cos., Inc.,* 314 U.S. App. D.C. 137, 62 F.3d 1469, 1476-1478 (D.C. Cir. 1995); *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115 (1st Cir. 1989); *Pfizer, Inc. v. Int'l Rectifier Corp.,* 538 F.2d 180, 195 (8th Cir. 1976),  *cert. denied,* 429 U.S. 1040, 97 S. Ct. 738, 50 L. Ed. 2d 751 (1977).

In a case involving electronically stored evidence (ESI), one court denied dismissal and set forth the **very high bar that must be adhered to, even where the court finds the circumstances troubling:**

> "While the Court reiterates that it is troubled by plaintiff's conduct, it does not find that his behavior rises to the level of creating an unconscionable scheme improperly to influence the Court or hamper defendants' ability to present their case. *See Herring v. United States*, 424 F.3d 384, 386-87 (3d Cir. 2005) ("[A] determination of fraud on the court may be justified only by the most egregious misconduct directed to the court itself, and . . it must be supported by clear, unequivocal and convincing evidence.") (internal   quotations omitted)."

<u>Goldrich v. City of Jersey City</u>, Civil Action No. 15-885 (SDW) (LDW), 2018 U.S. Dist. LEXIS

8

162044, at *34 (D.N.J. July 25, 2018)

Here, the late production of photos has been fully explained as a misunderstanding and there is no evidence that the they were intentionally hidden. Here, the late disclosure of the breakage of the phone has been fully explained as a case of not remembering when it occurred and reasonable believing that the phone in plaintiff's possession was the phone on the cruise. There is no evidence that this information was intentionally hidden as a part of a fraudulent scheme. Thus, there is no clear and convincing evidence of fraud justifying dismissal.

**The Eleventh Circuit has stated that false statements alone do not indicate bad faith so as to warrant the imposition of sanctions under the Court's inherent authority**. *See Byrne,* supra at 261 F.3d at 1125. *Barash v. Kates*, 585 F. Supp. 2d 1347, 1366 (S.D. Fla. 2006). They must instead be coupled other evidence in the record indicating that the statement was made for a harassing or frivolous purpose. *Barash v. Kates,* 585 F. Supp. 2d 1347, 1366 (S.D. Fla. 2006). In *Barash*, the court cited the *Byrne* holding that a party "…should not have been sanctioned pursuant to the Court's inherent authority, notwithstanding the fact that she made several false assertions in affidavits, depositions, and sworn statements filed with the court, because the record was devoid of any evidence from which the court could infer that the client knew her claim was frivolous or that she sought to harass the defendants." Barash v. Kates, 585 F. Supp. 2d 1347, 1366 (S.D. Fla. 2006).

In the case at bar, the defendant attempts to allege false statements as a basis for dismissal. However, there are no willfully or knowingly false statements in this case. The response to the request for production was innocently mistaken based on the above explanations of counsel and the plaintiff. The statements in the pleadings and in court in October of 2018 that all photos were produced and retrieved from the phone which took them were not knowingly or

9

willfully false. The reference to "all photos" was an error based on a belief that one photo was a duplicate of one of the previously produced 17 photos. The reference to the phone "as the one on the cruise" was made in the good faith belief since the plaintiff and Mr. Hancox did not remember that it was the cruise phone that had broken and been replaced specifically in October of 2016 and specifically after the cruise took place.

The defense argument that one cannot forget a phone being run over is a red herring since certainly one will remember that event if it is brought to their attention. What is key is that the plaintiff did not think of this event of October 2016 since she did not remember that this event specifically postdated the cruise of May 2016. How many persons can recall the specific month and year that that they replaced a phone. Most persons will simply recall that they have had the phone for a couple of or a period of years or months. This is reasonable belief, not willful.

The defense argument that the statements concerning the phone were part of a fraudulent scheme makes no sense. The easiest path for plaintiff would have been to produce the photos and disclose that they come from a different phone because the original was damaged and discarded. Then, there would have been no need then for a forensic exam. There was no benefit for plaintiff to say this was the phone if she knew it wasn't. Therefore, one must conclude Plaintiff had a good faith belief that the phone produce was the phone used on the cruise.

**"Due process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression "threatens to interfere with the rightful decision of the case**." *Wyle v. R.J. Reynolds Indus., Inc.,* 709 F.2d 585, 591 (9th Cir. 1983); *see also Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 806 (9th Cir. 1982) (holding default entry violated due process

where the sanctioned party's deception was wholly unrelated to the merits of the controversy). See also *Anheuser-Busch, Inc. v. Nat. Beverage Distribs*., 69 F.3d 337, 348 (9th Cir. 1995).

In the case at bar, Defendant seeks dismissal for essentially two reasons: late produced photos which change nothing about the merits of the case and the late disclosure that the phone which took the photos no longer exists and might contain other photos which *might* be relevant or *might* contain deleted photos. Besides the lack of clear and convincing evidence of fraud, there is no evidence here of prejudice to the defense. Indeed, Defendant has just listed an expert in human factors who claims to be able base her opinion in part on the consumption of alcohol.

**Finally, on the issue of choosing the appropriate sanction,** assuming arguendo the court finds fraud based on clear and convincing evidence , it should consider the following factors: (1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to continue in the future. *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.,* 191 F. Supp. 2d 440, 460-61 (S.D.N.Y. 2002).

In the case at bar, there is no evidence that the conduct was the product of intentional bad faith. Second, Plaintiff has shown above, that there has been no prejudice to the defense on the merits of this case. Third, we have essentially only one instance of alleged misconduct conduct in this case centered around the photos. Finally there have been corrections in that the

photos have been produced and no further issues concerning the photos exists. Under these circumstances, dismissal is far too drastic a remedy.³

**Dismissal pursuant to Rule 41(b) is not warranted unless there is a "clear pattern of willful contempt or misconduct."** *See Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337-38 (11th Cir. 2005); *Tarasewicz v. Royal Caribbean Cruises, Ltd.*, No. 14-CIV-60885, 2016 U.S. Dist. LEXIS 186121, at *32-33 (S.D. Fla. Mar. 17, 2016). For the reasons stated above, the sole isolated issue raised by the defendant concerns the photos and the phone and neither the incorrect discovery response nor the mistake concerning the identity of the phone rise to the level of being willful or worthy of a contempt finding so as to justify dismissal of the entire case.

**There is no clear and convincing evidence that plaintiff willfully violated the discovery rules or orders so as to justify a dismissal under Rule 37. The Eleventh circuit set down the Rule 37 standard for a dismissal as follows:**

> "A default judgment sanction requires a willful or bad faith failure to obey a discovery order. *Societe Internationale pour Participations Industrielles et Commerciales v. Rogers,* 357 U.S. 197, 212, 78 S. Ct. 1087, 1096, 2 L. Ed. 2d 1255 (1958). Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal. *In re Chase and Sanborn Corp.,* 872 F.2d 397, 400 (11th Cir.1989) (inability to comply); *Equal Employment Opportunity Comm'n v. Troy State Univ.,* 693 F.2d 1353, 1357 (11th Cir.1982) (simple negligence or misunderstanding). In addition, the Supreme Court has interpreted the Rule 37 requirement [**15] of a "just" sanction to represent "general due process restrictions on the court's discretion." *Insurance Corp. of Ireland, Ltd., v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707, 102 S. Ct. 2099, 2106, 72 L. Ed. 2d 492 (1982). Finally, the

---

³ The two motions to compel were unnecessary in that defense counsel failed, prior to both motions to specifically communicate the relief it later sought in its two motions. Before, the first motion to compel, defense counsel never said "Can we have all the photos from the phone or we are moving to compel." If they had, they would have been produced without the need for motion. As to the second motion to compel, plaintiff asked for the details of what the defense expert was going to do and no details were provided as to how he would go about the inspection (Counsel just indicated he wants to search the phone for all photos to find the ones from the cruise) until the second motion was filed along with an expert affidavit.

> severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders. *See Navarro v. Cohan,* 856 F.2d 141, 142 (11th Cir.1988)."

*Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1542 (11th Cir. 1993). See also See *EEOC v. Troy State Univ.*, 693 F.2d 1353, 1357 (11th Cir.1982) (The ultimate sanction of dismissal is not justified under Rule 37(b) if a party's failure to comply with a discovery order was caused by simple negligence or a misunderstanding of the court order.). See also Tarasewicz v. Royal Caribbean Cruises, Ltd., No. 14-CIV-60885, 2016 U.S. Dist. LEXIS 186121, at *19-20 (S.D. Fla. Mar. 17, 2016)(Dismissal not proper where Plaintiff destroyed his cell phone which purportedly contained information and photographs critical to the case and also made seven separate false statements regarding various other evidentiary matters). Six factors should be examined under the Rule. [4]

In this case, it is debatable if any court order has been violated. The court ordered inspection of Plaintiff's phone. The phone was provided and inspected. Plaintiff believed in all good faith it was the cruise phone as stated above until Plaintiff confirmed with Metro pcs that it was not phone. Thus, assuming arguendo the order was technically violated, it was only because Plaintiff was unable to comply with the order since Plaintiff no longer had phone. That loss of the phone, and its replacement was then reported immediately to the defendant.

In sum, there is no clear and convincing evidence whatsoever of willful behavior or bad faith or fraud or some unconscionable scheme. There was no violation of any court order since Plaintiff in good faith believed she was producing the subject phone. Most importantly, there is

---

[4] "1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Goldrich v. City of Jersey City*, Civil Action No. 15-885 (SDW) (LDW), 2018 U.S. Dist. LEXIS 162044, at *9 (D.N.J. July 25, 2018)

13

no smoking gun in these photos. She's having two mimosas earlier in the day instead of one later in day as she said originally which arguable is more favorable to the plaintiff than the defendant. The entire case should not be dismissed because of defendant's mere unfounded suspicion, without any evidence, that possibly a cruise photo was deleted and possibly it might favor the defense.

**2.    Sanctions should not be granted for failure to preserve ESI since the photos from the cruise were preserved, there is no prejudice to the defendant and no clear and convincing evidence that Plaintiff acted with intent to deprive the defendant of the phone or any photos.**

In order for a sanction to be imposed, the Court must find either prejudice to defendant or that plaintiff acted with the intent to deprive defendants of the ESI's use in the litigation. <u>Goldrich v. City of Jersey City</u>, Civil Action No. 15-885 (SDW) (LDW), 2018 U.S. Dist. LEXIS 162044, at *23 (D.N.J. July 25, 2018). In the case at bar, sanctions for failure to preserve ESI are not warranted. First, there is no evidence that Plaintiff that plaintiff acted with the intent to deprive defendants of the use of the phone in the litigation. Indeed, the evidence shows that data including photos were saved to the memory card which was inserted to the new phone. Second, there is no prejudice. Besides the preserving of photos from the damaged phone, the possession of the photos now by defendant, there is no evidence that the photos from this cruise were deleted. The mere allegation that maybe there was a deletion and maybe the photos would be favorable to the defendant is not evidence of prejudice.

Even assuming arguendo, there is one of the above findings, dismissal would be a far too drastic a remedy after considering the following factors as to what sanction to impose: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and . . . deter such conduct by others in the future."

14

*Capogrosso v. 30 River Court E. Urban Renewal Co.*, 482 F. App'x 677, 682 (3d Cir. 2012) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)); *Lexpath Techs. Holdings*, 2016 U.S. Dist. LEXIS 116597, at *16. *Goldrich v. City of Jersey City*, Civil Action No. 15-885 (SDW) (LDW), 2018 U.S. Dist. LEXIS 162044, at *23 (D.N.J. July 25, 2018).

Finally, assuming arguendo that there was a spoliation and it was negligent, but not willful, Defendant must be demonstrate that a reasonable trier of fact could find that the cruise phone would support its defenses. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 *, 2003 U.S. Dist. LEXIS 18771, 92 Fair Empl. Prac. Cas. (BNA) 1539. Furthermore,

> "In order to receive an adverse inference instruction, Zubulake must demonstrate not only that UBS destroyed relevant evidence as that term is ordinarily understood, but also that the destroyed evidence would have been favorable to her. 'This corroboration requirement is even more necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him.'"

Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 *, 2003 U.S. Dist. LEXIS 18771, 92 Fair Empl. Prac. Cas. (BNA) 1539. In the case at bar, there is no proof that the cruise phone contained any evidence favorable to the defense, only speculation. Therefore, sanctions should not be granted for failure to preserve ESI since the photos from the cruise were preserved, there is no prejudice to the defendant and no clear and convincing evidence that Plaintiff acted with intent to deprive the defendant of the phone or any photos.

**3.     Conclusion:** The defendant's motion is nothing less than an unfounded attempt to close the court house doors to Plaintiff. There is no clear and convincing evidence whatsoever of willful behavior or bad faith or fraud or some unconscionable scheme. There was no violation of any court order since Plaintiff in good faith believed she was producing the subject phone. The Plaintiff and her husband are artists, not I.T. experts. If they really had wanted to commit a

15

fraud or act in bad faith, they would never produced one photo and they would never produced any phone. Most importantly, there is no smoking gun in these photos. She's having two mimosas earlier in the day instead of one later in day as she said originally which arguably is more favorable to the plaintiff than the defendant. The entire case should not be dismissed because of defendant's mere unfounded suspicion, without any evidence, that possibly a cruise photo was deleted and possibly it might favor the defense. The motion to dismiss should be denied.

    WHEREFORE, defendant's motion for sanctions should be denied.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 28th day of November 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        **HOFFMAN, LARIN & AGNETTI, P. A.**
        909 North Miami Beach Blvd.,
        Suite 201
        Miami, Florida 33162
        Telephone: (305) 653-5555
        Email: pleadings@hlalaw.com

        /s/ *David L. Perkins*
        JOHN B. AGNETTI, ESQUIRE
        Florida Bar No. 359841
        DAVID L. PERKINS, ESQUIRE
        Florida Bar No. 264911