UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISIONS

CASE NO.: 17-cv-20942-JEM/LOUIS

JANE ELIZABETH SNIDER-HANCOX

    *Plaintiff,*

vs.

NCL (BAHAMAS) LTD, a
Bermuda Company d/b/a
NORWEGIAN CRUISE LINES,

    *Defendant.*

_____/

## DEFENDANT'S OBJECTIONS TO MAGISTRATE'S ORDER [DE 219] GRANTING IN PART PLAINTIFF'S MOTION TO STRIKE/EXCLUDE OPINIONS OF DEFENDANT'S EXPERTS [DE 159]

Defendant, NCL (BAHAMAS) LTD., a Bermuda Company d/b/a NORWEGIAN CRUISE LINES, ("Norwegian"), by and through undersigned counsel, and pursuant to the applicable Federal Rules of Civil Procedure and Local Rules for the Southern District of Florida, and moves this Court to sustain its objections and modify the Order [DE 219] granting in part Plaintiff's Motion to Strike/Exclude Opinions of Defendant's Experts, and in support thereof states:

### I.    Introduction

This action arises out of an unreported alleged slip and fall near a cruise ship bar on an outdoor deck. Plaintiff's Motion to Strike/Exclude Opinions of Defendant's experts was considered by the Magistrate Judge on January 15, 2019, (argument only).  On January 29, 2019, the Magistrate Judge conducted an evidentiary *Daubert* hearing at which Norwegian's experts

testified. On February 7, 2019, the Magistrate Judge granted Plaintiff's motion to exclude Norwegian's biomedical and biomechanical expert Dr. Lockhart, and Norwegian's human factors expert, Dr. Skow. [DE 219].

Norwegian objects to the portions of the Magistrate's Order granting Plaintiff's Motion to Strike Dr. Thomas Lockhart and Dr. Emily Skow. Norwegian does not object to the Magistrate Judge's Order denying Plaintiff's Motion to Strike Dr. Jerry Sher and Ryan Horton.

As more fully set forth below, the Order striking Dr. Lockhart and Dr. Skow is clearly erroneous and contrary to law regarding the following findings: (1) that Dr. Lockhart's "torque opinion" is unreliable and not helpful to the jury; (2) that Dr. Lockhart is unqualified to render an opinion regarding the inconsistency of Plaintiff's body position and appearance with the alleged injury; (3) that Dr. Skow's opinions regarding Plaintiff's ability to see and avoid the alleged hazard are within the common knowledge of the jury and therefore not helpful under *Daubert;* (4) that an inspection of the actual conditions that gave rise to the incident are required to find Dr. Skow's opinion to be helpful under *Daubert*; and (5) that Dr. Skow lacked the personal, educational or professional experience to opine regarding the effects of alcohol on a person's ability to react to their environment.

## II.    Legal Standard

Federal Rule of Civil Procedure 72(a) requires a district court to modify or vacate the order of a magistrate judge where the order is "clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Matter of Application of O'Keeffe,* 184 F.Supp.3d 1362, 1366 (S.D.Fla. 2016) (citing

2

*Krys v. Lufthansa German Airlines,* 119 F.3d 1515, 1523 (11th Cir. 1997). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Krys,* 119 F.3d at 1523, citing, *Tolz v. Geico Gen. Ins. Co.,* No. 08-80663-CIV, 2010 WL 384745, at *2 (S.D.Fla. Jan. 27, 2010).

Magistrate Rule 4(a) of the Magistrate Rules of the Local Rules for the Southern District of Florida provides that "[a]ny party may appeal from a Magistrate Judge's order . . . within (14) fourteen days . . [by filing] written objections which shall specifically set forth the order, or part thereof appealed from[,] a concise statement of the alleged error in the Magistrate Judge's ruling, and statutory, rule or case authority, in support of the moving party's position." Mag.R. 4(a); *Toruno v. Sam's East, Inc.,* No. 17-cv-21918-WILLIAMS, 2018 WL 4828437, at *1 (S.D.Fla. Aug. 10, 2018).

### III.    The Magistrate Judge's Order is clearly erroneous and contrary to law

### A.  Striking Dr. Lockhart is clearly erroneous and contrary to law

The Order misstates Dr. Lockhart's testimony and is therefore clearly erroneous. The Magistrate Judge's finding that "Dr. Lockhart fails to connect his experience in biomechanics, or the articles cited in his report, to the conclusion that energy forces required that Plaintiff's injuries occur on the left side of her body, and thus it must be excluded," misstates the conclusion Dr. Lockhart reported and testified to. [*See,* DE 219, p. 8; DE 171-1, p. 2]. Dr. Lockhart reported that: "In my opinion . . . [Plaintiff] should have landed to her **right side** given that the right foot was slipping. Without counter torque, it would have been impossible for her to land on her left side given the right foot slippage." [DE 171-1, p.2 (emphasis supplied)]. Consistent with his report, Dr. Lockhart testified at the evidentiary hearing: "So, within the documents the plaintiff was

explaining that she slipped with the right foot . . . when you are slipping with the right . . . your rotational torque goes to the right. [See, transcript from the evidentiary hearing before Magistrate Judge Lauren Louis held on January 29, 2019   at 27:17-23, attached hereto as Exhibit "A" referenced in the docket as DE 218]. "So, unless . . . something other, you know, kind of deterrence occurred, like getting hit to the other side during that slipping, **she would have had to have landed on her right side**." [ Ex. "A", at 27:17-28:4 (emphasis supplied)]. The Magistrate Judge erred in stating that Dr. Lockhart failed to connect his experience and the sources cited in his report to his conclusion that energy forces required that Plaintiff's injuries occurred on the <u>left side</u> of her body. There is no evidence in Dr. Lockhart's report or his sworn testimony that he claims Plaintiff's injuries occurred on the left side of her body. Rather, Dr. Lockhart's opinion is that from a biomechanical point of view, Plaintiff's injuries on her left side could not have occurred in the manner she described, i.e., a slip and fall initiated with a slipping of the right foot. [DE 171-1]. Because the Order misstates Dr. Lockhart's testimony and excluded his opinions based on the misstatement, the Order is clearly erroneous.

 <u>The finding that Dr. Lockhart's "torque opinion" is not supported by a reliable methodology is clearly erroneous and contrary to law.</u>[1] The Order states that "Dr. Lockhart testified he relied on Plaintiff's deposition testimony, several scholarly articles, which he wrote, and his experience as a biomechanic to reach his conclusion. **Without more**, Dr. Lockhart's opinion lacks the reliability required under *Daubert.*" [DE 219, p. 7-8 (emphasis supplied)].

---

[1] The Court referred to Dr. Lockhart's opinion that Plaintiff's injuries are inconsistent with her account of the slip and fall from a biomechanical perspective as his "torque opinion." [DE 219, p. 6].

**FOREMAN FRIEDMAN, PA, 2 S. Biscayne Blvd., Suite 2300, Miami, FL  33131  Tel: 305-358-6555/Fax: 305-374-9077**

As a threshold matter, Plaintiff's motion to strike Dr. Lockhart did not raise an objection to the methodology Dr. Lockhart used in arriving at the torque opinion. Plaintiff's counsel represented at the initial *Daubert* hearing held January 15, 2019:

The Court: In this disclosure Lockhart appears to be qualified. Do you agree?

Mr. Perkins: He does.

The Court: OK. He does provide an objective basis for his conclusion that she should have landed on her right side if the injury occurred in the way described. Do you agree with that?

Mr. Perkins: Yes.

The Court: And this seems to be something that is outside the purview of a common jury and thus it would be helpful for them to understand the forces of torque in the course of a slip.

Mr. Perkins: **We didn't attack the torque opinion with the various prongs of Daubert.**

[*See* transcript of January 15, 2019 hearing attached as Exhibit B, at 46:1-15(emphasis supplied)]. Given that both the Magistrate Judge and Plaintiff's counsel recognized that Dr. Lockhart was qualified, offered an opinion that Plaintiff should have landed on her right side if the injury occurred in the way described, for which he had an objective basis, and that his opinion was outside the purview of the common jury, the Magistrate Judge's later decision to exclude his opinions is clearly erroneous.

Even if the Plaintiff had challenged Dr. Lockhart's methodology, application of extensive, relevant experience to the facts of a case has been found sufficient to satisfy the reliability prong of *Daubert. See, e.g., Adams v. Laboratory Corp. of America,* 760 F.3d 1322, 1330 (11th Cir. 2014)

5

(application of extensive, relevant experience contributed to the reliability of expert's methodology) (citing *Dickenson v. Cardiac & thoracic Surgery of E. Tenn.,* 388 F.3d 976, 982 (6th Cir. 2004) (district court abused discretion in excluding doctor's standard of care testimony that was supported by extensive relevant experience)).

Here, Dr. Lockhart has the type of extensive and relevant experience that can support a finding that his methodology is reliable. He has led the field in research of slip and fall accidents for the last 20 to 25 years, operating the first lab to study the actual mechanisms of slips, trips and falls. [ Ex. "A", at 12:1-18; 22-23]. In connection with his research Dr. Lockhart has performed thousands of simulated falls to study the biomechanics of falls. [ *Id.* at 28:17-25]. Dr. Lockhart holds Ph.D., Masters, and bachelor's degrees in Industrial and Systems Engineering from Texas Tech University. [*Id.*, at 12:2-18]. Dr. Lockhart continued his study of fall accidents while a professor in the Systems Engineering Department at Virginia Tech. [*Id.* at 12:19-21]. He is board certified in the field of ergonomics. [*Id.* at 13:11-19]. Dr. Lockhart is currently employed as a professor in the School of Biological and Health Systems Engineering at Arizona State University. [*Id.* at 14:10-25], and also serves as a research professor at the Mayo Clinic, and as an adjunct professor at Barrow Neurological Institute. [*Id.* at 16:11-17]. In short, Dr. Lockhart's entire professional career has focused on the study of slip and falls, and his extensive, relevant experience speaks to the reliability of his opinions.

That being said, Dr. Lockhart's opinions were based on more than his experience. Contrary to the Magistrate Judge's Order, Dr. Lockhart's opinion that the Plaintiff would have landed on her right side if she (as she testified) slipped with her right foot, was based on scientific peer reviewed literature, experimental studies, his expertise watching people fall thousands of times, in

addition to Plaintiff's deposition. [ Ex. "A", at 20:22-24; 28:13-25; 37:1-6; 45:18-23]. At the first *Daubert* hearing conducted on January 15, 2019, the Magistrate Judge stated that she had "previewed that I think it [the "torque" opinion] is admissible . . . I think it is at a minimum fairly disclosed such that this tells me what his opinion is and what it was based on and no testimony would be necessary to further rule on it." [Exhibit B, at 72:18-73:5].  Furthermore, at the January 25, 2019 hearing, upon the Court's questioning, Dr. Lockhart testified: "The Court: And I want to make sure that I understand the factual basis for that opinion. Is it from your reading of her deposition and her testimony that she slipped off of her right foot? A: Yeah, I mean, that was the salient, but my rationale is based upon epidemiological data, as well as biomechanical data." [Exhibit A. at 35:17-23 (emphasis supplied)]. On further questioning by the Court regarding the factual basis for Dr. Lockhart's opinion, he testified that while Plaintiff's deposition was a basis of his opinion "to a certain extent" other bases existed which included "probability" as reported in epidemiological data that reflects some percentages of less than five percent who are injured in the torso area for a fall such as that reported by Plaintiff and that when combined with biomechanical data, that without an external force, such as a desk or someone hitting her during the slip, which was not described in Plaintiff's deposition, the direction of the "tunnel reactive torque" would not be deterred and she would have fallen to the right. [*Id.* at 36: 6-25; 37:1-6]. Additionally, Dr. Lockhart's report references his review of other case materials such as Plaintiff's Complaint, Plaintiff's answers to interrogatories, two depositions of Plaintiff, depositions of Plaintiff's husband and parents, photographs produced by Plaintiff, and medical records of Plaintiff from Broward Medical Health Center. [DE 171-1, p. 1].

7

Dr. Lockhart's methodology is more than *ipse dixit* and satisfies the reliability prong of *Daubert. See, Rossi v. Darden,* No. 16-21199-CIV-ALTONAGA, 2017 WL 2129429, at *7 (S.D. Fla. May 17, 2017) (application of expert's knowledge of engineering principles to case-specific information not *ipse dixit* and satisfies *Daubert's* reliability prong – noting plaintiff may attack opinions via cross examination).

Because the Magistrate Judge considered an incomplete set of bases for Dr. Lockhart's opinions, the law cited in the Order is misapplied. The law cited in the Order refers to cases in which an expert relies on his experience and expects the fact finder to simply take his word for it. [DE 219, p. 8]. That is not the case here, where Dr. Lockhart referred to objective probabilities found in biomechanical and epidemiological data. [ Ex. "A", at 36-37]. Dr. Lockhart's opinions are not therefore *ipse dixit*, but rather are supported by a methodology that has been found reliable in this District for biomechanic experts. *See, e.g. Berner v. Carnival Corp.,* 632 F.Supp.2d 1208, 1215 (S.D.Fla. 2009) (biomechanic expert's opinion met threshold of reliability where it was based on the law of physics, education, experience research, and accepted principles in the bioengineering field); *See also, Quiet Technology DC-8, Inc. v. Hurel-Duboi UK Ltd.,* 326 F.3d 1333, 1345 (11th Cir. 2003) (alleged flaws in methodology of generally reliable scientific evidence should be the subject of cross-examination and go to the weight, rather than the admissibility of expert testimony-collecting cases).

The Magistrate Judge misapplied *Edwards v. Shanley,* 580 F. App'x 816, 824 (11th Cir. 2014), a case in which the court found an expert was properly excluded where his opinions were too vague, "indiscernible" and "uncertain." In *Edwards,* an expert opined that a dog attack was

8

"prolonged" without an explanation of the meaning of "prolonged" and could not, upon questioning, specify what timeframe he meant by "prolonged." *Edwards,* 580 Fed.Appx. at 824. Relying on *Edwards,* the Magistrate Judge opined Dr. Lockhart's opinions were "too vague" to help the jury in that Dr. Lockhart did not explain or "quantify the energy" required to result in Plaintiff's injuries. [DE 219, p. 8].

Dr. Lockhart's opinion that Plaintiff could not have been injured in the manner claimed under biomedical and biomechanical principles is not indiscernible or uncertain as the opinion in *Edwards.* Dr. Lockhart simply opines that if one slips with their right foot they will land on their right side unless some countervailing force is applied mid fall. Dr. Lockhart's opinion is not analogous to the opinion excluded in *Edwards, supra,* relied upon by the Magistrate Judge.

Furthermore, the "quantity" of energy required to result in Plaintiff's injury is not relevant to Dr. Lockhart's opinion. Here, Dr. Lockhart is not opining regarding how much force is required to cause an injury to the left clavicle, or that a fall could not have caused such an injury. Rather he opines regarding how the principles of biomechanics contradict Plaintiff's explanation for how she fell and injured her left side – simply that if she slipped with her right foot, as she testified, under the principles of body mechanics she would have landed on her right (uninjured) side. [DE 171-1]. Moreover, the Magistrate Judge's application of law concerning ruling out alternative causes seems to misunderstand Dr. Lockhart's testimony that epidemiological data demonstrates that less than 5% of slips with the right foot would result in a fall on the left side <u>where there was an external force</u> (such as a desk or someone hitting the plaintiff mid-fall) that changes or affects the torque that was propelling Plaintiff to the right. Given the absence of Plaintiff's testimony or other evidence to suggest a countervailing force was encountered by Plaintiff on her way to the floor,

9

Dr. Lockhart ruled out any alternative cause to conclude that Plaintiff could have been among the "less than 5 percent."

The Magistrate Judge erred in finding Dr. Lockhart was unqualified to opine that Plaintiff did not have the alleged injury on the date claimed, based on his examination of photographs depicting Plaintiff's arm position and appearance the day after the alleged incident. Dr. Lockhart testified: "[Y]ou see the left hand that's contorted and inside her leg, that posture actually creates force and if her clavicle is broken, there is no way she could sit like this smiling like this." [ Ex. "A", at 32:16-19]. Based on "biomechanical, physiological, and anatomy" principles, Dr. Lockhart opined that, if Plaintiff's incident had occurred at the time and in the manner alleged, Plaintiff would have been expected to have visible bruises the following day, which were not depicted in the photographs on which he was asked to comment. [*Id.* at 33:2-17]. Dr. Lockhart also testified that he has studied and practiced in the area of the effect trauma has on bruises appearing on the body. [*Id.* at 33:18-22].

The Magistrate Judge erred in failing to apply law defining the subject matters about which biomedical/biomechanical engineers are qualified to testify, under which Dr. Lockhart's opinions are well within the scope of his expertise. "[I]t is well-established in the case law that biomechanical engineers . . .'are qualified to testify about **how forces may affect or injure an individual**.'" *Bostick v. State Farm Mutual Automobile Insurance Company,* 314 F.Supp.3d 1265, 1276 (M.D. Fla.  2018). citing *Berner v. Carnival Corp.,* 632 F.Supp.2d 1208, 1213 (S.D.Fla. 2009) (emphasis supplied). Other Courts have acknowledged that biomedical engineers are not prohibited from testifying as to medical causation. *See, e.g. Kerr v. Target Corp.,* 2016 WL 3531302, *2 (E.D.TX 2016) (biomedical engineer not prohibited from testifying as to medical

FOREMAN FRIEDMAN, PA, 2 S. Biscayne Blvd., Suite 2300, Miami, FL  33131  Tel: 305-358-6555/Fax: 305-374-9077

causation) *citing Cartwright v. Am. Honda Motor Co., Inc.,* No. 9:09CV205, 2011 WL 3648565, at *3 (E.D.Tex. Aug. 15, 2011) (allowing biomedical engineer to testify as to causation); *Dorsett v. Am. Isuzu Motors, Inc.,* 805 F.Supp.1212, 1226 (E.D. Pa. 1992, *aff'd* 977 F.2d 567 (3d Cir. 1992) (holding biomedical engineer could testify as to the type of injuries he would expect to see if seatbelts of certain designs were used). Under the liberal qualification standard set by *Daubert* and its progeny, it was clearly erroneous and contrary to law for the Magistrate Judge to find that Dr. Lockhart is not qualified to testify to his opinions regarding how the images depicted in Plaintiff's photographs support his opinions.

### B.  Striking Dr. Emily Skow is clearly erroneous and contrary to law

The finding that a person's ability to see a liquid and evade it "is common knowledge" and that therefore Dr. Skow's opinions did not meet the "helpfulness" requirement of *Daubert*[2] is clearly erroneous.  The Magistrate Judge noted that human factors experts are generally qualified to testify "regarding whether a person would have seen a condition and how they would have reacted to it." [DE 219, p. 10]. Dr. Skow testified that in the field of human factors, she has learned that visual information people believe they use while ambulating is not always what science shows they actually use.  [ Ex. "A", at 59:16-60:2]. Dr. Skow recounted using tracking equipment akin to little eyeglasses to track where people stand, and how long they fixate on certain locations, with results that are often contrary to where people say they look as they ambulate. [*Id.,* at 60:1-10]. Dr. Skow further testified that the general population does not understand the science behind human perception. [*Id.,* at 60:18-21]. Thus, Dr. Skow stated: "So, we all know how to walk. We all know how (sic) do things like look around the environment and see things, but the average

---

[2] The Magistrate Judge found Dr. Skow was qualified to render a human factors opinion and noted that Plaintiff did not challenge the reliability of Dr. Skow's opinions. [DE 219, p. 10].

**FOREMAN FRIEDMAN, PA, 2 S. Biscayne Blvd., Suite 2300, Miami, FL  33131  Tel: 305-358-6555/Fax: 305-374-9077**

person does not know all of the components that go into that information processing that results in, say, a perception or the ability to adjust one's gait in a certain period of time." [*Id.* at 61:1-6 (emphasis supplied)].

The Magistrate Judge's opinion, without explanation, erroneously concludes that in this case, Dr. Skow's expertise in the scientific specialty of human factors can be rejected, despite Dr. Skow's recognized qualifications, and the lack of challenge to the reliability of her methodology. At the initial *Daubert* hearing on Dr. Skow, the Magistrate Judge stated with respect to Dr. Skow's opinions unrelated to the effect of alcohol on perception: "the perception opinion for Skow . . .appear[s] to disclose at least *a scientific basis* for the opinion and articulate an explanation for the opinion." [Exhibit B, at 69:18-21 (emphasis supplied)].  It is clear from the courts' general acceptance as human factors as a scientific specialty that the subject areas in which such experts regularly testify is outside the realm of common knowledge and is therefore helpful to the trier of fact. Indeed, the Magistrate Judge found that Dr. Skow's perception opinion had a scientific basis. *Id.*  Federal Rule of Evidence 702 states that "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

The Magistrate Judge erred in excluding Dr. Skow on the grounds that she did not inspect the "actual conditions that gave rise to the lawsuit," and erroneously relied on *Harrison v. Royal Caribbean Cruises, Ltd.,* No. 1:12-CV-24111-UU, 2013 WL 11316997, at *4 (S.D.Fla. Nov. 8, 2013).* In *Harrison,* an engineer was proffered as a human factors expert, despite a lack of qualifications in that area, and intended to testify regarding whether a fixture on a ship, namely a

**FOREMAN FRIEDMAN, PA, 2 S. Biscayne Blvd., Suite 2300, Miami, FL  33131  Tel: 305-358-6555/Fax: 305-374-9077**

fountain, was open and obvious, citing various predetermined measurements. The engineer disclosed intended to rely on standards which were inapplicable to a cruise ship as a matter of law. *Id.*

Unlike in *Harrison,* here Dr. Skow is proffered to testify regarding the science of perception and avoidance of hazards while ambulating, i.e. human factors, a field in which she is eminently qualified. In *Harrison,* the fixture itself was capable of inspection, while in the instant case the alleged puddle involved in the unwitnessed, unreported accident is not available because it (assuming it ever existed) was a transitory condition, rather than a permanent fixture. Accordingly, requiring a shipboard inspection of the "actual conditions that gave rise to the lawsuit" as a prerequisite to allowing testimony on human factors is not compelled by *Harrison* or any other legal authority. It was therefore clearly erroneous and contrary to law to require Dr. Skow to go back in time and inspect the "actual" conditions that gave rise to the lawsuit as a prerequisite to offering her expert human factors opinions.

The Magistrate Judge erred in determining that Dr. Skow is unqualified to render an opinion regarding the effects of alcohol on a person's ability to perceive and avoid hazards while ambulating. At the evidentiary hearing, the Magistrate Judge noted: "With respect to her [Dr. Skow's] opinion on causation, her field of study and her experience in studying alcohol, (sic) agree is vast and deep . . ." [ Ex. "A", at 93:7-9]. Dr. Skow's "vast and deep" experience in studying alcohol within her field of human factors qualifies her to present the opinions offered on alcohol's effect on a person's ability to perceive and avoid hazards. The Magistrate Judge erred in ignoring Dr. Skow's testimony regarding her qualifications to testify regarding the relationship between alcohol and the brain and behavior including how alcohol affects humans' interaction with

13

environments. [*See, e.g.,* Ex. "A", at 51:5-10]. The Magistrate Judge erred in citing Dr. Skow's access to research articles that informed her opinion <u>as the only source</u> of Dr. Skow's qualifications to testify regarding alcohol.

Dr. Skow's testimony demonstrates she is qualified to render opinions on the effects of alcohol on a person's ability to perceive and avoid stepping over a liquid. Dr. Skow has a Bachelor of Arts from the University of Notre Dame in psychology, and a master's degree and Ph.D. in cognitive neuroscience from the University of Arizona. [*Id.* at p. 50:14-20]. Dr. Skow defined human factors as the scientific study of the factors that affect how humans interact with the world in everyday situations, including the effects of drugs and alcohol on the brain and behaviors. [*Id.* at 51:15-22]. Dr. Skow relied on the testimony of Plaintiff and photographs depicting the Plaintiff consuming alcohol and applied it to the science of human factors. [*Id.*, at 58:19-20; 59:1-4]. Dr. Skow applied the facts in this case to the science <u>in her field.</u> [*Id.* at 59:5-15]. Dr. Skow included a review of scientific literature on the effects of alcohol on the brain and behavior, including alcohol's impact on one's ability to perceive and attend, and make decisions. [*Id.* at 59:8-15]. The totality of Dr. Skow's education, training and experience show she is qualified to opine as to how alcohol affects a person's ability to see and avoid stepping over a liquid, and the Magistrate Judge's failure to consider Dr. Skow's background in determining her qualifications was clearly erroneous.

## IV.    Conclusion

Given that both Dr. Lockhart and Dr. Skow have met the qualifications, reliability and helpfulness prongs under *Daubert,* the Order excluding them, as demonstrated above, was clearly erroneous and contrary to law. *See, Allison v. McGhan Med. Corp.* 184 F.3d 1300, 1311 (11th Cir. 1999) (The gatekeeper role . . . is not intended to supplant the adversary system or the role of the

14

jury." ). Accordingly, Norwegian respectfully requests the District Court modify the Order of the Magistrate Judge [DE 219] and deny Plaintiff's motion to strike Dr. Lockhart and Dr. Skow.

WHEREFORE, Defendant, NCL (BAHAMAS) LTD., a Bermuda Company d/b/a NORWEGIAN CRUISE LINES, respectfully requests that this Honorable Court modify the Order of the Magistrate Judge [DE 219] and deny Plaintiff's motion to strike Dr. Lockhart and Dr. Skow.

Dated:  February 19, 2019
        Miami, Florida

Respectfully submitted,

**FOREMAN FRIEDMAN, PA**

BY: */s/ Michael C. Gordon*
**Jeffrey E. Foreman, Esq.**
FL Bar No.: 0240310
jhernandez@fflegal.com
**Michael C. Gordon, Esq.**
FL Bar No.: 0149284
mgordon@fflegal.com
**Jonathan Hernandez, Esq**.
FL Bar No. 069047
**Noah D. Silverman, Esq.**
FL Bar No. 401277
FOREMAN FRIEDMAN, P.A.
One Biscayne Tower, Suite 2300
South Biscayne Blvd
Miami, FL 33131
Phone: 305-358-6555
Fax: 305-374-9077
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 19, 2019 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some

other authorized manner for those counsel or parties who are not authorized to electronically receive

Notices of Electronic Filing.

BY:      /s/*Michael C. Gordon*
Michael C. Gordon, Esq.

## SERVICE LIST

David L. Perkins, Esq.
HOFFMAN, LARIN & AGNETTI, P.A.
909 N. Miami Beach Blvd., Suite 201
Miami, FL 33162
Telephone:      (305) 653-5555
Facsimile:      (305) 940-0090
pleadings@hlalaw.com
davidp@hlalaw.com
Attorneys for Plaintiff

John B. Agnetti, Esq.
HOFFMAN, LARIN & AGNETTI, P.A.
909 N. Miami Beach Blvd., Suite 201
Miami, FL 33162
Telephone:      (305) 653-5555
Facsimile:      (305) 940-0090
pleadings@hlalaw.com
john@hlalaw.com
Attorneys for Plaintiff

Geoffrey E. Probst, Esq.
gprobst@ncl.com
Norwegian Cruise Line
7665 Corporate Center Drive
Miami, FL 33126
Phone: 305-436-4377, Fax: 305-468-2132
Attorney for Defendant

Jeffrey E. Foreman, Esq.
jforeman@fflegal.com
Michael C. Gordon, Esq.
mgordon@fflegal.com
Jonathan Hernandez, Esq.
jhernandez@fflegal.com
Foreman Friedman, PA
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, FL 33131
Phone:  305-358-6555, Fax:  305-374-9077
Attorneys for Defendant

**FOREMAN FRIEDMAN, PA, 2 S. Biscayne Blvd., Suite 2300, Miami, FL  33131  Tel: 305-358-6555/Fax: 305-374-9077**